*Northern District*

No. 5353

**ISADORE & LEONA SEIDLER**

v.

**MAX LITMAN, d-b-a**
**NORTH SHORE FUEL COMPANY**

(April 29, 1960)

*Present:* Brooks, J., (Presiding), Northrup
and Kelleher, JJ.

Case tried to *Duggan, J.,* in the District Court of Southern
Essex. No. 2402.

*Brooks, J.* This is an action of tort or
contract in two counts for the same cause of
action. Plaintiffs seek to recover damages to
their home caused by the explosion of an *oil
burner*. Count I is in tort for negligence.

Count 2 is for breach of contract on the part of defendant to service the oil burner in a workmanlike manner. The answer is General Denial and Contributory Negligence.

The main point at issue is whether the evidence set forth in the report warranted the trial judge in finding that the cause of the explosion was conjectural and in finding that defendant was not negligent.

*The evidence pertinent to the issue was as follows:* Plaintiff owned his home, in the basement of which was installed an oil heater of the common high-pressure-atomizing-type with electric ignition. In 1951, defendant, engaged, among other activities, in the business of servicing oil burners, entered into an oral agreement with plaintiffs to furnish fuel and to service and make repairs as needed on the oil burner. This service continued until May 2, 1956, when the burner "exploded" causing the damage sued upon.

No one other than the defendant or his employees serviced or repaired the oil burner during the period of 1951 up to and for a few months following the explosion. At no time did plaintiffs, nor anyone in their household, attempt to make repairs or adjustments to the oil burner or any of its equipment. Each time that it apparently was not operating properly, the fact would be reported to the defendant who was relied on by plaintiffs to make whatever repairs or adjustments were needed to remedy the trouble.

For several months prior to the explosion, on May 2, 1956, one of the plaintiffs noticed

deposits of soot in the house. Complaint was made that during this period the burner failed to produce any heat. In response to calls, defendant went to the house, yet deposits of soot continued. There was evidence that there was no other source of soot except the oil burner.

On the Sunday preceding the explosion of the oil burner which occurred on a Saturday, defendant in response to a complaint, arranged to check the oil burner on Wednesday. Since neither plaintiff expected to be at home, it was arranged that defendant enter the house through the bulk-head door. This, defendant or employees did, and in the course of making repairs, the explosion occurred.

There was evidence that in addition to regular oil deliveries defendant serviced the oil burner in 1953 and 1954, and that the motor of the oil burner was replaced, and an oil burner nozzle provided February 16, 1956.

According to testimony of defendant, the cause of the explosion was a defective smoke pipe which defendant first discovered after the explosion. He found that it had "rotted out" at a spot near the wall. According to defendant, such a condition would result in lack of proper draft which would result in carbonization of the electrodes of the burner, which in turn, would result in delayed combustion. Without proper draft, the oil burner would not function properly. A delayed combustion of oil atomized into the boiler under high pressure, is variously described as a "puff-back" "back-fiire," or "explosion." Plaintiffs did not know about, or have reason

to know, of the defective condition of the smoke pipe.

There was in common use by oil-burner repairman, an inexpensive Service-Repair Kit. With this Kit, and with a draft gage, a repairman can determine the overall efficiency of the operation of the burner. Defendant had never made use of such a service kit.

According to expert testimony, any one or a combination of the following conditions could have caused the explosion:

1. Ignition failure, due to carbon on electrodes causing short circuit or improper adjustment of electrodes.
2. Poor combustion, due to use of improper nozzle.
3. Improper draft.
4. The opening up of the boiler for cleaning without shutting off the main switch.
5. Defective smoke stack.

At the time of the explosion there were in effect Rules and Regulations of the Department of Public Safety, Board of Fire Prevention Regulations, Rule No. 11. These provided as follows: "Any person desiring to make, alter, or repair any oil-burning installation, shall have obtained a Certificate of Competency from the Fire Marshall." Defendant, in 1948, had in fact received a Certificate of Competency. The purpose of this certificate was to insure that the work and repairs, etc. should be done in a workmanlike manner by someone familiar with the

business. Defendant had never applied for a Certificate of Competency after the Rules and Regulations of April 28, 1953, became effective, and only one of his employees held a certificate. Neither this employee nor defendant was on the plaintiffs' premises at the time of the explosion, but present were two unidentified employees of defendant. Defendant denied that he nor any of his employees were at plaintiffs' home on the day of the explosion.

At the close of the trial, plaintiffs filed extensive Requests for Rulings, all of which were acted upon affirmatively or negatively by the trial court, which rendered a decision, pertinent parts of which are as follows, leaving out matter already referred to above:

"I find as a fact that the defendant delivered oil and made repairs to the plaintiffs' property for a number of years and was compensated for it. I find as a fact that every time he was called to the house he responded, and did whatever work he deemed necessary. The defendant was unable to secure the employees as witnesses; neither did the plaintiffs have either of the employees summonsed. What caused the back-fire or the explosion is a matter of conjecture. There was no evidence other than the testimony of experts that it may have been caused by two or three different causes. The plaintiff called the attention of the court to a recent case in the explosion of a carbonated tonic bottle, but I do not find sufficient evidence to apply the doctrine of Res Ipsa Loquitur upon the evidence as

heard by me in this case. Therefore, I cannot find in the evidence any proven negligence on the part of defendant or his employees. The testimony was entirely conjectural and I cannot find any negligence, real or implied."

■ The Court's decision is to stand, unless so plainly wrong as to be reversible as a matter of law. *Carmichael v. Carmichael,* 324 Mass. 118, 121; *Fraser v. Fraser,* 336 Mass. 597, 601. We are not prepared to say that the Court was clearly wrong in its finding that the explosion was conjectural, that there was no negligence on the part of defendant, nor that the doctrine of Res Ipsa Loquitur does not apply.

■ There was evidence upon which the trial Judge could have found that defendant should have discovered the defective smoke pipe, but he did not so find. We are not prepared to say that clearly he should have so found.

■ We do not think that any failure to comply with the Rules and Regulations of the Department of Public Safety has such immediate bearing on the liability as to require reversal of the Court's decision, nor do we find prejudicial error in the disposition of the Requests for Rulings, which it is not necessary to deal with in detail.

*Report dismissed.*

Richard J. Cotter, James D. Ragland of Boston, for the Plaintiffs.

Irving I. Brendze of Chelsea, Goldman & Goldman of Lynn, for the Defendant.